Citation Nr: AXXXXXXXX
Decision Date: 06/30/21 Archive Date: 06/30/21

DOCKET NO. 200428-80604
DATE: June 30, 2021

REMANDED

Entitlement to service connection for low back strain is remanded.

Entitlement to service connection for left knee anterior cruciate ligament (ACL) reconstruction is remanded.

Entitlement to service connection for right knee condition is remanded.

Entitlement to service connection for neuropathy, right foot, to include as secondary to the service-connected right ankle condition, is remanded.

REASONS FOR REMAND

The Veteran had active duty service in the United States Air Force from March 2014 to April 2016, with additional periods of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA) in the Air National Guard. 

The Board notes that the rating decision on appeal was issued in January 2020 and is subject to the Appeal Modernization Act (AMA). 84 Fed. Reg. 138, 169 (Jan. 18, 2019); 38 C.F.R. § 19.2. The Veteran timely appealed this rating decision to the Board in April 2020 and requested Direct Review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Procedurally, the Veteran's claims were initially denied in September 2019 and November 2019 rating decisions. In December 2019, the Veteran filed a Supplemental claim for the issues on appeal and the RO continued the denials in a January 2020 rating decision because the evidence submitted was not new and relevant. 

The Board also notes that the Veteran and his representative submitted an updated Notice of Disagreement in October 2020 and requested to switch his appeal to the Evidence submission review for his claim seeking service connection for posttraumatic stress disorder (PTSD). His request as to the PTSD claim was subsequently granted. Thus, the claim for service connection for PTSD will be adjudicated under the Evidence lane and addressed in a separate Board decision.

As an administrative matter, the Board notes that the Veteran requested the RO send him copies of his VA examinations. A notation in the back of the form by VA staff indicates that such request had not been completed at such time. See February 2020 Statement in Support. As it is still unclear whether those records were sent out by the RO prior to the claims being transferred to the Board, the RO should attempt to send the Veteran copies of the requested VA examinations upon remand of the issues discussed below. 

1. Entitlement to service connection for low back strain is remanded.

2. Entitlement to service connection for left knee ACL reconstruction is remanded.

3. Entitlement to service connection for right knee condition is remanded.

4. Entitlement to service connection for neuropathy, right foot, to include as secondary to the service-connected right ankle, is remanded.

The Veteran contends that his low back strain, left and right knee conditions, and right foot condition were incurred in service. 

Regarding the low back strain, the Veteran reported that he had a hard fall while doing winter warfare mobility drills on skis and was evaluated by a civilian company assigned to his unit at Mt. Hood. He reported current symptoms of chronic low back pain, inability to squat or jog without severe discomfort and inflammation, and inability to sit for durations more than 30 minutes without severe reduction in range of motion and SI pain. See October 2018 Statement in Support. 

Service treatment records in October 2013 note complaints for upper back pain (between shoulder blades) and back spasms due to improper dead lift techniques. In a July 2014 service treatment record, the Veteran was diagnosed with low back pain (lumbago). See April 2019 STR.

A February 2018 treatment record demonstrates a diagnosis for low back pain. 

A June 2019 VA examination noted no diagnosis for the back. The examiner opined that the Veteran's back condition was less likely than not related to service because he did not have an identified back condition despite his complaints of back pain following a fall. The examiner further stated that service records noted complaints for back spasms in the upper back due to incorrect lift procedures and that there was no evidence in the record for low back condition or chronic back condition other than lumbago. 

A November 2019 MRI of the spine demonstrates transitional lumbosacral anatomy and degenerative disc disease at L4-L5 and L5-S1 with grade 1 anterolisthesis of L5 on S1. See February 2020 CAPRI.

The Board finds the June 2019 VA examination is inadequate. The examiner noted no current diagnosis for a back condition. However, the November 2019 MRI demonstrates degenerative joint disease of the low back. Furthermore, service treatment records also reflect an assessment for low back pain or lumbago. As such, a new VA examination is warranted to determine the nature and etiology of the back condition given the most recent diagnosis of the spine evidenced in the November 2019 MRI.

Regarding the knee conditions, the evidence of record demonstrates the left knee condition clearly and unmistakably pre-existed service. 

A July 2012 private medical opinion from Dr. M.F. notes evaluation of the left knee for the purpose of admission into the "SEAL/UDT" training. Dr. M.F. discusses the Veteran's history of left knee ACL reconstruction following a football injury but indicates the Veteran had no left knee issues following his ACL surgery and that the Veteran's participated in year round intense, physical conditioning regimens required for performance as a javelin thrower for the U.S. Olympics without any difficulties. Dr. M.F. opined there were no limitations or restrictions regarding his left knee. See April 2019 STR.

Service treatment records reflect complaints for left knee trouble, left knee intra-articular injection, left knee effusion, and left knee pain and swelling. See April and August 2019 STRs. Service records also demonstrate a memorandum for waiver of physical standards. The Veteran was originally deemed ineligible to meet physical standards for special operations due to his history of left ACL reconstruction until such waiver was approved for unrestricted line, restricted line, and staff corps in July 2012. An April 2016 service treatment record reflects a diagnosis of right knee medial collateral ligament (MCL) sprain following an April 2016 injury and the Veteran's complaints for pain with running, landing from fast roping, and upon right knee valgus test. See October 2018 Medical Treatment Record.

A June 2019 VA examination for the knees demonstrated a diagnosis of left knee osteoarthritis and ACL reconstruction surgery. The examiner noted the Veteran was diagnosed with right knee MCL sprain following a 2016 injury but that the right knee sprain has since resolved. The examiner opined the Veteran's left knee condition was less likely than not related to service and noted the following:

A left knee ACL tear with reconstruction in 1999 prior to service. While treatment records do not indicate complaints of knee pain during service, his condition has not progressed beyond normal progression. While the Veteran had participated in activities in service that are rigorous and hard on joints such as parachutist activity, there are no findings indicating continued pain or any loss of ROM on today's exam. There is no evidence of an aggravation or further injury at this time. The left knee ACL tear with surgical repair, which clearly and unmistakably existed prior to service, was not aggravated beyond its natural progression by knee pain during service. 

A November 2019 VA treatment record demonstrates a history of chronic left knee pain, decreased ROM, and swelling with prolonged sitting/standing/walking. 

A December 2019 MRI demonstrates horizontal tear of posterior horn of medial/lateral meniscus and post-surgical changes of ACL reconstruction. 

The Board finds the June 2019 VA examination is inadequate. Although the examiner indicated there was no evidence of aggravation of the left knee in service, several treatment records demonstrate complaints for left knee pain, swelling, and effusion even after Dr. M.F. opined in July 2012 that the Veteran's left knee displayed no limitations or restrictions following his ACL reconstruction. As such, the evidence of record reflects some level of aggravation. Furthermore, MRI imaging of the left knee following the June 2019 VA examination demonstrates a tear and post-surgical changes of ACL reconstruction which likely indicate chronic changes in the left knee. Lastly, the examiner concluded the Veteran's right knee MCL resolved since his 2016 diagnosis; however, the examiner failed to explain why this is so and a nexus opinion was not obtained. As such, a new VA examination is warranted to determine the nature and etiology of the Veteran's bilateral knee condition. 

Regarding the right foot condition, the Veteran contends that he has right foot neuropathy with numbness and tingling while running or during weight-bearing activities. See October 2018 Statement in Support. He also contends that his right foot condition is secondary to his service-connected right ankle. See October 2020 Appellate Brief. 

A February 2016 service treatment record demonstrates treatment for the right ankle and continued pain following increase in physical training. 

 A February 2018 treatment record reflects an emergency room visit for right foot laceration from an unspecified injury. The Veteran reported that he was setting up a winter camp site as part of a training exercise for his unit and that upon chopping wood with an ax, the swing of the ax bounced off the wood and hit his right foot. See December 2019 Medical Treatment Record. 

VA treatment records reflect a provisional diagnosis for pain in unspecified foot and right ankle and subtalar fusion. See May 2020 CAPRI. 

The Veteran has not been afforded a VA examination for his claimed right foot neuropathy. 

The Board notes, however, that in Saunders v. Wilkie, 885 F.3d. 1356 (Fed. Cir. 2018), the United States Court of Appeals for the Federal Circuit addressed the issue of whether pain without an accompanying pathology can constitute a "disability" under 38 U.S.C. § 1110. The Federal Circuit concluded that "pain is an impairment because it diminishes the body's ability to function, and that pain need not be diagnosed as connected to a current underlying condition to function as an impairment." Id. at 1364. Nonetheless, the Federal Circuit explained that to establish the presence of a disability based on subjective pain, a Veteran "will need to show that his or her pain reaches a level of a functional impairment of earning capacity." Id. at 1368.

As such, a remand is warranted to afford the Veteran a VA examination for his claimed right foot condition. VA has a duty to assist claimants to obtain evidence needed to substantiate a claim. See 38 U.S.C. § 5103A; 38 C.F.R. § 3.159. VA's duty to assist includes providing a medical examination when it is necessary to make a decision on a claim. 38 U.S.C. § 5103 (d); 38 C.F.R. § 3.159. Such development is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159 (c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006) (noting that the third prong may be satisfied by lay evidence of continuity or equivocal or non-specific medical evidence).

In this case, there is evidence and/or symptoms of his claimed current right foot condition, an in-service event, and an indication that the disability may be associated with his periods of active duty for training (ACDUTRA) or inactive duty for training (INACDUTRA). Accordingly, a remand is required for an examination to determine the nature and etiology of the Veteran's right foot condition and opinion consistent with the Federal Circuit holding in Saunders.

The matters are REMANDED for the following action:

1. The RO must send the Veteran copies of the requested 2019 and 2020 VA examinations, if not already, as indicated in the February 2020 correspondence. Such efforts by the RO should be documented in the claims file. 

2. Schedule the Veteran to determine the nature and etiology of the low back condition. Provide a copy of this remand and record for the examiner to review. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed.

Determine whether it is at least as likely as not (50 percent or greater probability) that the Veteran's low back condition had its onset during service or is otherwise related to the Veteran's period of ACDUTRA, is related to any injury occurring during a period of INACDUTRA, or is otherwise related to active service. 

The RO must provide the examiner with the dates of service for any periods of ACDUTRA and INACDUTRA. 

The examiner must consider service treatment records and post-service treatment records showing complaints and treatment for the low back. 

A complete rationale must be provided for any opinion rendered. If any opinion cannot be provided without resorting to speculation, the examiner must explain why this is so.

3. Schedule the Veteran to determine the nature and etiology of the knee conditions. Provide a copy of this remand and record for the examiner to review. All studies, tests, and evaluations deemed necessary by the examiner should be performed.

In particular, the examiner should obtain copies of the most recent diagnostic images of the knees

a) After examining the Veteran and reviewing the records, the examiner must indicate whether there is clear and unmistakable (i.e., obvious, manifest, or undebatable) evidence that the Veteran's left knee condition, which clearly and unmistakably pre-existed service, was NOT aggravated (i.e., permanently or chronically worsened beyond natural progression) during service. 

The examiner should consider numerous service treatment records evidencing complaints for left knee pain, swelling, and effusion. The examiner should also consider the July 2012 private opinion from Dr. M.F. noting no left knee limitations or restrictions following his ACL reconstruction prior to active duty. 

b) The examiner must determine whether it is at least as likely as not (50 percent probability or more) that the Veteran's right knee had its onset during service or is otherwise related to the Veteran's period of ACDUTRA, is related to any injury occurring during a period of INACDUTRA, or is otherwise related to active service. 

The examiner must support the opinion with a complete rationale. In providing the opinion, the examiner must consider the Veteran's lay statements. If any opinion cannot be provided without resorting to speculation, the examiner must explain why this is so.

4. Schedule the Veteran to determine the nature and etiology of the right foot condition. Provide a copy of this remand and record for the examiner to review. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed.

(a) The examiner must determine all foot disabilities (to include arthritis, neuropathy, and pain) present during the appeal period. 

(b) The examiner must indicate (i) whether it is at least as likely as not (50 percent probability or more) that the Veteran's right foot condition is proximately due to his service-connected right ankle, or (ii) whether the Veteran's right foot condition is chronically aggravated beyond its natural progression by his service-connected right ankle. 

The U.S. Court of Appeals for Veterans Claims (Court) recently held that "permanent worsening" of a non-service-connected disability is not required to establish secondary service connection on the basis of aggravation. See Ward v. Wilkie (16-2157, 17-1204).

The Court also recently held that causation and aggravation are independent concepts and should have separate findings and rationales. See Atencio v. O'Rourke, 30 Vet. App. 74 (2018). As such, the clinician must provide separate findings and rationales relating to causation and aggravation.

(c) The examiner must also address whether it is at least as likely as not (50 percent probability or more) that the Veteran's right foot condition had its onset during the Veteran's period of ACDUTRA, is related to any injury occurring during a period of INACDUTRA, or is otherwise related to active service. 

The examiner should consider the Veteran's provisional diagnosis of pain in unspecified foot and right ankle and subtalar fusion.

The examiner must support the opinion with a complete rationale. In providing the opinion, the examiner must consider the Veteran's lay statements. If any opinion cannot be provided without resorting to speculation, the examiner must explain why this is so.

 

 

DELYVONNE M. WHITEHEAD

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Y. Asfaw, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.