ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| The Haskell Company | ) | ASBCA No. 63291 |
| | ) | |
| Under Contract No. N40085-17-C-8331 | ) | |

APPEARANCE FOR THE APPELLANT:      James E. Krause, Esq.
                                                            James E. Krause, PA
                                                            Jacksonville, FL

APPEARANCES FOR THE GOVERNMENT:   Craig D. Jensen, Esq.
                                                            Navy Chief Trial Attorney
                                                            Devin A. Wolak, Esq.
                                                            Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE TAYLOR
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

In this appeal, The Haskell Company (Haskell or appellant) seeks payment for costs incurred due to unusually severe weather and seasonal differences allegedly resulting from government project design changes on a joint reserve center that pushed construction into adverse weather periods. The Navy filed a motion for summary judgment asserting the Board should deny Haskell's claim because the appellant signed Modification No. A00001 (Mod 1) containing a release that resolved all costs, impact effect, and delays and disruptions, arising out of or incidental to the project design changes. Haskell opposes the motion alleging a material factual dispute exists as to whether the parties intended the release to include appellant's current claim. Haskell also contends the Navy's subsequent conduct manifested an intent in contradiction of the release terms. Based upon the current record and drawing all reasonable inferences in appellant's favor, we deny the Navy's motion since a material factual dispute exists as to whether the parties had a meeting of the minds with regards to the substance of the release.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The parties filed numerous statements of facts and responses.[1] We set out the relevant facts for the purpose of this motion below.

---

[1] On January 13, 2023, the government filed "Respondent's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment." On February 13, 2023, appellant filed "Appellant's Response to Respondent's Statement of

I.  The Contract and Design Change Modification

1.  On September 21, 2017, the Naval Facilities Engineering Systems Command, Mid-Atlantic (NAVFAC or Navy) awarded firm fixed-price Contract No. N40085-17-C-8331 (the contract) to Haskell to design and build a joint reserve center in Des Moines, Iowa.  (R4, tab 2.4 at 7614)[2]

2.  Haskell submitted a proposed design that included a sheet flow drainage system (R4, tab 3.2 at 7752).  NAVFAC accepted Haskell's proposed design and awarded it the contract (R4, tab 2.4 at 7616).  The contract included FAR clauses 52.233-1, DISPUTES (MAY 2014), 52.242-14, SUSPENSION OF WORK (APR 1984), 52.243-4, CHANGES (JUN 2007), 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984), and DFARS clause 252.243-7002, REQUESTS FOR EQUITABLE ADJUSTMENT (DEC 2012) (*id*. at 7623-24).  In its original baseline schedule, Haskell indicated it intended to start construction on April 27, 2018 (R4, tab 3.2 at 7896).

3.  On April 4-5, 2018, Haskell provided its final completed design drawings to the Navy for review (R4, tab 3.1 at 7723).  During the design review process, the Navy decided it wanted a different drainage system than the proposed slope-based site drainage design (*id*. at 7723-24; app. supp. R4, tab 20 ¶ 7 (supplemental declaration of Mr. Kenneth Duncan)).  The parties agreed Haskell would make several design changes and negotiated an estimated price for the changes with a 42-day time extension with 21-days being compensable (*id*. at ¶ 9).

---

Undisputed Material Facts in Support of Respondent's Motion for Summary Judgment."  Appellant, however, did not file a "Statement of Genuine Issues of Material Fact" in accordance with Board Rule 7(c)(1).  The government then filed "Respondent's Reply in Support of its Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment" and "Respondent's Supplemental Statement of Undisputed Material Facts Concerning the Defenses Raised in Appellant's Response to Defendant's Motion for Summary Judgment."  On April 7, 2023, appellant filed "Appellant's Supplementary Response to Respondent's Statement of Undisputed Material Facts" and "Appellant's Statement of Genuine Issues of Material Facts to Respondent's Supplemental Statement of Undisputed Material Facts."  On May 12, 2023, the government filed "Respondent's Surreply in Support of its Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment" and "Respondent's Reply in Support of its Supplemental Statement of Undisputed Material Facts Concerning the Defenses Raised in Appellant's Response to Defendant's Motion for Summary Judgment."

[2] The government's Rule 4 file is Bates numbered with a six-digit number proceeded by "GOV."  Here, we delete the prefix and the leading zeroes.

4. On April 10, 2018, the Navy requested Haskell submit updated pricing to complete the various design changes (R4, tab 4.1 at 8065-66). On April 11, 2018, Haskell provided the Navy with its updated pricing and a request for a time extension, with compensable days, due to the estimated increased costs resulting from the Navy's 27 design changes (R4, tab 4.1 at 8064-65). Haskell's estimate of probable cost included a detailed cost summary for each of the 27 changes (R4 tab 2.6 at 7664-77). The probable cost estimate did not include any costs for future unanticipated weather impacts resulting from those changes (*id*.).

5. In an email dated April 20, 2018, the Navy informed Haskell it intended to issue a modification without further negotiations (R4, tab 4.1 at 8064). The Navy indicated the modification should include "a statement to the effect that this captures the cost and time of all changes, delays, and extra effort expended in the design phase" and Haskell should let the Navy know if that was not the case (*id*.). Mr. Kenneth Duncan, Haskell's Director of Project Development on the contract, declares the parties did not discuss any release of rights regarding future changes or claims during any of the discussions surrounding the design change (app. supp. R4, tab 20 ¶ 11).

6. The Navy provided Haskell authorization to proceed with the design changes on May 1, 2018 (R4, tab 3.1 at 7736). Haskell agreed to proceed with the work even though the government had not yet issued the formal modification (app. supp. R4, tab 20 ¶ 12). Haskell began construction work on May 10, 2018 (R4, tab 3.2 at 7974).

7. On July 12, 2018, Mr. Duncan sent an email to the new Navy contracting officer, Mr. Alex Wingert, reminding him that the Navy had not yet issued the design-change modification (R4, tab 3.2 at 7958). NAVFAC brought Mr. Wingert on as a new hire in July 2018 (app. supp. R4, tab 20 ¶ 12). Mr. Duncan further advised Mr. Wingert that Haskell intended to submit a request for equitable adjustment (REA) for "weather delays" due to the "excessive amount of rain since we mobilized" (R4, tab 3.2 at 7958).

8. On August 23, 2018, the Navy issued Mod 1 pursuant to the changes clause, FAR 52.243-4, CHANGES, to address the site drainage design phase and other changes (R4, tab 2.6). The modification included the phrase "Design Phase Changes" in its description paragraph (*id*. at 7659) and incorporated all the changes identified in Haskell's April 11, 2018, estimated model of probable cost (*id*. at 7660). The modification granted Haskell a 42-day time extension to the contract completion date due to the change (*id*. at 7660). The modification also increased the total contract price by $485,217 from $19,080,569 to $19,565,786 (*id*.).

The modification included the following "Modification Acceptance" language:

> Acceptance of this modification by the contractor
> constitutes an accord and satisfaction and represents
> payment in full for both time and money and for any and
> all costs, impact effect, and for delays and disruptions
> arising out of, or incidental to, the work as herein revised.

(*Id.*). The modification contained no qualifications or reservation of claims (*id.*). Mr. Duncan and Mr. Wingert signed the modification (*id*. at 7659). Mr. Duncan declares he believed Mod 1 was for the estimated costs and anticipated time delays resulting from the revisions at the end of the design phase (app. supp. R4, tab 20 ¶ 12). In his opinion, Mod 1 was a formality documenting the parties' previous agreement on the impacts resulting from the design changes (*id.*). Mr. Duncan further declares he had no intention of waiving Haskell's rights for future change requests or claims when he signed the modification (*id.*).

II. <u>Unusually Severe and Unanticipated Weather Impact Modifications</u>

9. During the summer of 2018, the Des Moines, Iowa area experienced one of the wettest summer seasons in many years delaying the grading and building foundation/slab activities (app. supp. R4, tab 20 ¶ 16; R4, tab 4.2 at 8067-68, 8073-80). The adverse weather began in June 2018 and continued through October 2018 (R4, tab 4.2 at 8093-8204 (daily logs for June – October 2018); R4, tab 4.2 at 8081-91 (adverse weather days calendars)). Haskell's original baseline schedule indicates it planned to install all-weather construction access roads and building foundations that would have allowed it to proceed with construction despite the rain and install the walls and roofs prior to the winter weather (R4, tab 3.2 at 7896-7921; app. supp. R4, tab 20 ¶ 17). The wet site issues delayed all construction activities into the winter forcing Haskell to incur winter weather protection costs and further delays (app. supp. R4, tab 20 ¶ 17.).

10. On November 19, 2018, Haskell submitted an initial request for time and cost impacts due to the weather impacts occurring from June 1, 2018, through October 31, 2018 (R4, tab 4.2 at 8067-8217).[3] Haskell requested a 48-calendar day extension (*id*. at 8068) and a cost impact of $256,449 (*id*. at 8069).

---

[3] Appellant asserts it did not actually submit this weather time and cost impact to the government until December 18, 2018 (Appellant's Statement of Genuine Issues of Material Facts to Respondent's Supplemental Statement of Undisputed Material Facts at 4 (citing app. supp. R4, tab 14)). Regardless, the actual submission date is not material.

4

11.  On December 11, 2018, Haskell also submitted a "Notice of Cold Weather Construction Project Costs," advising the Navy that the cold weather was negatively impacting the construction schedule and it intended to submit an REA for additional costs (R4, tab 3.2 at 8021).  Haskell noted the delay in the critical path activities was "due to the unseasonably wet weather experienced this year" (*id*.).  On January 25, 2019, Haskell submitted a second "Notice of Cold Weather Construction Project Costs (R4, tab 3.2 at 8022).  Haskell again noted the critical path activities had been impacted by the need to perform this work during the winter months (*id*.).

12.  The contracting officer responded to the weather impacts by letter dated February 14, 2019 (R4, tab 4.3 at 8218-19).[4]  The contracting officer informed Haskell that the government could not provide an equitable adjustment for increased costs due to unusually severe weather because FAR 52.249-10(b), DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) requires delays for "unusually severe weather" be addressed by granting additional time but not compensation (*id*. at 8218).  The contracting officer also sent Haskell an email on February 14, 2019, asking if Haskell wanted to revise its weather-related delay REA to include more time due to the cold weather (R4, tab 4.4 at 8220-21).  The contracting officer informed Haskell that any modification for increased time due to weather delays would have to include release language (*id*.).

13.  On April 16, 2019, Haskell and the Navy met to discuss the schedule (R4, tab 4.5 at 8224).  At that meeting, Haskell explained its position that the delays were the government's responsibility, and Haskell was entitled to damages (app. supp. R4, tab 21 ¶ 9 (supplemental declaration of Mr. Michael Banks Gwyn)).  The government agreed the contract could be extended but indicated no justification existed to pay additional costs (R4, tab 4.5 at 8224).  The government did not assert Haskell had given up its rights to assert this monetary claim due to the release in Mod 1 (R4, tab 21 ¶ 9).

14.  On May 9, 2019, the Navy issued Modification No. A00006 (Mod 6) pursuant to FAR 52.249-10(b)(1)(x), the Default (Fixed-Price Construction) clause, as a "Unilateral Definitized Change Order for Time Only" to extend the contract completion date by 91 calendar days due to the impacts from unusually severe weather (R4, tab 2.11).[5]  Haskell signed the modification on May 10, 2019 (R4, tab 3.2 at 8006).  Mod 6 does not contain any release language.  In his supporting "Modification Memorandum", the contracting officer indicated the government agreed to extend the contract due to the weather delays but would not compensate Haskell for additional costs (R4, tab 4.5 at 8224).  The memorandum further indicates Haskell

---

[4] The letter itself is undated, but the contracting officer's digital signature is dated "02.14.2019."

[5] Mod 6 cites to FAR 52.249-10(b)(x).  The correct FAR cite should have been 52.249-10(b)(1)(x).

wished to pursue additional costs associated with the delays and therefore would not sign a bilateral modification with the standard release language (*id*.). The government agreed to unilaterally issue the modification so that the contractor would not have to waive its rights to pursue cost impacts (*id*. at 8225).

III. Contract Modification No. A00007

15. On August 30, 2019, the Navy issued bilateral Modification No. A00007 (Mod 7) pursuant to the contract's Changes clause, to extend the contract completion date due to concurrent delays (R4, tab 2.12). Mod 7 included the same release language as Mod 1 (*compare id*. at 7712 *with* R4, tab 2.6 at 7660). Mr. Gwyn, Haskell's Group President, signed the modification on September 6, 2019, and added the following language:

> The Haskell Company (HASKELL) agrees that the acceptance included in this modification A00007 dated August 30, 2019 for the specific Haskell delay noted that is specifically related to the delay in the completion of the Front Gate. Haskell reserves and retains all rights arising from or related to previous Requests for Equitable Adjustment (REA) and/or other notices provided to NAVFAC related to initial design review delays and subsequent releases for construction, delays to design completion in an effort to mitigate steel and metals materials costs escalation that was caused by the U.S. Government, further delays caused by extreme weather in the summer of 2018 and the winter of 2018 and 2019. These items include both monetary damages and impacts requiring extensions of time incurred by HASKELL and are outside the scope of this Contract Modification. HASKELL's impacts and damages noted above include only those items which can presently be determined.

(R4, tab 2.12 at 7711). Mr. Gwyn indicates he added this additional language "to assure that Haskell's rights to damages for delays were preserved for any and all delays that had been incurred on the project" (app. supp. R4, tab 21 ¶ 18). The contracting officer, on that same day, initialed and dated Haskell's additional reservation language (R4, tab 2.12 at 7711).

6

IV. Haskell's Claims and Appeal

16. By letter dated June 25, 2020, Haskell submitted a detailed REA for delay damages (R4, tab 4.11 at 8265-73).[6] In its REA, Haskell requested compensation from the government for costs incurred dealing with extreme rainfall and unanticipated winter conditions it encountered during construction due to the government's delay in approving the design (*id*. at 8265). The Navy denied the REA on September 28, 2020 (R4, tab 4.12 at 8274-75). The government based its denial upon a finding that Haskell had failed to meet its burden of proof to show the government had unduly delayed the approval of Haskell's design (*id*. at 8274).

17. On March 3, 2021, Haskell submitted supplemental information to the Navy in response to its September 28, 2020, denial of its REA (R4, tab 4.13 at 8276-95). In response to a question as to why Haskell's REA was not covered in the original modification that covered the government design changes, Haskell stated that at the time the parties negotiated and signed the modification that covered the design change, neither party anticipated unusual weather delays or that the delays would force it to perform certain activities in the winter (*id*. at 8283-84).

18. On June 23, 2021, the government again denied Haskell's REA (R4, tab 4.14 at 8296). The government's stated basis for denying the REA was that it did not have merit (*id*).

19. On September 14, 2021, Haskell submitted a certified claim to the contracting officer (R4, tab 3.1). In its claim, Haskell sought damages resulting from the government's change to the project design that resulted in a delay to construction pushing that work into "unbuildable severe weather conditions," interfering with Haskell's ability to complete performance per the critical path schedule (*id*. at 7719). Haskell requested a payment of $2,563,656 (*id*. at 7720).

20. On February 24, 2022, the Navy issued a contracting officer's final decision (COFD) in response to Haskell's certified claim (R4, tab 1). The Navy again found Haskell's claim had no merit (*id*. at 9). The contracting officer determined Haskell had not established that the government caused the alleged delay (*id*.).

---

[6] The document is dated June 25, 2020, but the electronic signature indicates the document was signed on July 1, 2020 (R4, tab 4.11 at 8265). Mr. Gwyn indicated Haskell submitted the document to the government on July 1, 2020 (app. supp. R4, tab 21 ¶ 13).

21.  On May 24, 2022, Haskell appealed the COFD to the Board.  In its complaint, Haskell stated Mod 1 "addressed drainage design changes that are the subject of Haskell's claim and provided a 42-day time extension, including 21 non-compensable days for design and 21 compensable days for construction" (compl. ¶ 62).  Haskell further noted Mod 1 included the release language (*id.*).

DECISION

The Parties Contentions on the Navy's Motion for Summary Judgment

On January 13, 2023, the Navy filed the pending motion for summary judgment. In its motion, the Navy contends Mod 1 addresses the same subject matter as Haskell's claim – delay and increased costs resulting from the drainage design changes (gov't mot. at 3).  The Navy further contends Haskell admitted in its claim and complaint that Mod 1 addressed the same subject matter as its claim (*id.*).  Finally, the Navy asserts Mod 1 contains an unqualified version of NAVFAC's standard contractor release (*id.*). The Navy concludes Haskell's claim must be denied due to accord and satisfaction (*id.* at 5-7).

Haskell contends the parties did not have a "meeting of the minds" concerning whether the Mod 1 release included Haskell's claim for future costs incurred due to unusually severe weather and seasonal differences allegedly resulting from the government project design changes, government actions during contract performance contradicted its interpretation that Mod 1 was intended to be a release of Haskell's claim, and the Mod 7 reservation of rights superseded the Mod 1 release (app. resp. at 2).

I.  Standard of Review

We will grant summary judgment only if the moving party shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that may make a difference in the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment."  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

While the movant must demonstrate there is no "genuine issue for trial," *Celotex*, 477 U.S. at 324 (citing FED. R. CIV. P. 56(e)), the nonmovant must "make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  To overcome a motion for summary judgment, the "party opposing the motion must point

8

to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." *SRI Int'l v. Matsushita Elec. Corp. of Am*., 775 F.2d 1107, 1116 (Fed. Cir. 1985) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd*., 731 F.2d 831, 836 (Fed. Cir. 1984)). A non-movant seeking to defeat summary judgment by suggesting conflicting facts "must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby, Inc*., 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 288-89 (1968)).

## II. A Disputed Material Fact Exists as to Whether the Parties had a Meeting of the Minds Regarding the Subject Matter of the Mod 1 Release

### A. Release and Accord and Satisfaction

The Navy seeks summary judgment upon its affirmative defenses of release and accord and satisfaction. The Navy contends the Board should deny Haskell's appeal since Mod 1 contained a release and it addressed the same subject matter as Haskell's claim (gov't mot. at 3). The Navy also argues the Mod 1 release is an accord and satisfaction between the parties and bars any further recovery (gov't mot. at 6-7). Release and accord and satisfaction are separate affirmative defenses. *Holland v. United States*, 621 F.3d 1366, 1377 (Fed. Cir. 2010) (citations omitted). In government contracts, however, a bilateral contractual modification may be both a release and an accord and satisfaction. *Id*. (citing *Koules v. Euro-Am. Arbitrage, Inc*., 689 N.E.2d 411, 414 (Ill. App. Ct. 1998)). As such, the effect of a release contained in a modification is analyzed under both the law of accord and satisfaction and releases. *Odyssey Int'l*., ASBCA Nos. 62062, 62279, 21-1 BCA ¶ 37,902 at 184,071-72.

An accord and satisfaction occurs when "some performance other than that which was claimed to be due is accepted as full satisfaction of the claim." *Holland*, 621 F.3d at 1377. The Navy bears the burden of proof establishing an accord and satisfaction since it is an affirmative defense. *Southern Def. Sys., Inc*., ASBCA Nos. 54045, 54528, 07-1 BCA ¶ 33,536 at 166,135. "To prove accord and satisfaction, the [Navy] must show '(1) proper subject matter; (2) competent parties; (3) a meeting of the minds of the parties; and (4) consideration.'" *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009) (quoting *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002)).

A release is a contractual defense where a party abandons a claim or relinquishes a right that could be asserted against another. *Holland*, 621 F.3d at 1377; *Odyssey Int'l*., 21-1 BCA ¶ 37,902 at 184,072. Since "a release is contractual in nature, it must be interpreted in the same manner as any other contract term or provision." *Sungjee Constr. Co.*, ASBCA Nos. 62002, 62170, 23-1 BCA ¶ 38,400 at 186,598 (citing *Korte-Fusco Joint Venture*, ASBCA No. 59767, 15-1 BCA ¶ 36,158 at 176,455). "'[T]he inquiry regarding releases should focus on the intent of the

parties at the time the release is executed[,] and this intent should be sought from the whole and every part of the instrument.'" *Sungjee Constr.* 23-1 BCA ¶ 38,400 at 186,598 (quoting *Futuronics Corp.*, ASBCA No. 29324, 85-2 BCA ¶ 18,137 at 91,045).

### B. No Meeting of the Minds on the Scope of the Release

The parties do not dispute competent parties signed Mod 1. Mr. Duncan signed the modification for Haskell while Mr. Wingert signed on behalf of the Navy (SOF ¶ 8). The element of competent parties is satisfied when authorized parties sign the modification. *Costar III, LLC*, ASBCA No. 56479, 11-2 BCA ¶ 34,830 at 171,370. Furthermore, the parties do not dispute the Navy provided Haskell consideration as part of the modification. Mod 1 granted Haskell a 42-day time extension to the contract completion date and increased the contract price by $485,217 (SOF ¶ 8). Appellant contends, however, there was no meeting of the minds concerning the subject matter of the release as it pertains to its claim (app. resp. at 7). Appellant asserts it intended the release in Mod 1 to address only the costs and delays it encountered during the design phase and not further unknown construction delays resulting from adverse weather (*id*.).

"For there to be an accord and satisfaction, there must be mutual agreement between the parties with the intention clearly stated and known to both the contractor and the government." *Collazo Contractors, Inc*., ASBCA No. 53925, 05-2 BCA ¶ 33,035 at 163,747, *aff'd Collazo Contractors, Inc. v. Winter*, 221 Fed. Appx. 993 (Fed. Cir. 2007) (citing *Metric Constructors, Inc.*, ASBCA No. 46279, 94-1 BCA ¶ 26,532 at 132,058). To prevail on its motion, the Navy must prove the parties' intended Mod 1 to address the same subject matter as Haskell's disputed claim before the Board. *See Meridian Eng'g Co. v. United States*, 885 F.3d 1351, 1364 n. 12 (Fed. Cir. 2018) (citing *King Fisher Marine Serv., Inc. v. United States*, 16 Cl. Ct. 231, 236-37 (1989), for the proposition that the subject matter of the contract modification relied upon as an accord and satisfaction must be the same as the disputed claim). In other words, the government must prove the parties intended the execution of Mod 1 as a mutual agreement between the parties to settle all claims arising out of or incidental to the design phase changes including appellant's claims for increased costs resulting from the adverse weather conditions Haskell faced due to the alleged government caused delay. *DTC Eng'rs & Constructors, LLC*, ASBCA No. 57614, 12-1 BCA ¶ 34,967 at 171,898 ("Wrongful government delays that are not reasonably anticipated and push a contractor's performance into periods of adverse weather can be a cause of additional delay for which a contractor may be compensated.").

To determine the parties' intent concerning Mod 1, we begin our analysis by examining Mod 1's language to determine its plain and ordinary meaning. *JAAAT Tech. Servs., LLC*, ASBCA No. 61792 *et al.*, 21-1 BCA ¶ 37,878 at 183,970 ("We look to the plain language of the release, as 'if the provisions are clear and

10

unambiguous, they must be given their plain and ordinary meaning.'" (citing *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341)). The Mod 1 release language indicates Haskell accepted the modification as an "accord and satisfaction and represents payment in full for both time and money and for any and all costs, impact effect, and for delays and disruptions arising out of, or incidental to, the work as herein revised" (SOF ¶ 8). To prevail on its motion, the government must show a meeting of the minds between the parties that the phrase "delays and disruptions arising out of . . . the work as herein revised" in the release language includes Haskell's current claim. *Collazo*, 05-2 BCA ¶ 33,035 at 163,747.

The "work as herein revised" appears to reference the design changes since the modification changed that work (SOF ¶ 8). The modification included the phrase "Design Phase Changes" in its description paragraph and incorporated all the changes identified in Haskell's April 11, 2018, estimated model of probable cost (*id.*). In that probable cost model, Haskell included the costs resulting from the Navy's 27 design changes (SOF ¶ 4). Haskell did not include any costs for future unanticipated weather impacts allegedly resulting from the design change delay (*id.*).[7] Mod 1's plain language appears to limit the release to those costs directly resulting from the design changes.

The parties' intent at the time they negotiated and signed Mod 1 supports this conclusion. The Board will review the circumstances surrounding the execution of a release to determine the parties' true intention even when "a release is complete on its face and unqualified." *Sedona Contracting, Inc.*, ASBCA No. 52093, 99-2 BCA ¶ 30,466 at 150,513. Mr. Duncan signed Mod 1 on Haskell's behalf (SOF ¶ 8). Mr. Duncan, in his declaration, asserts he had no intention of waiving Haskell's rights for future change requests or claims when he signed the modification (*id.*). Mr. Duncan further declares he believed Mod 1 was for the estimated costs and anticipated time delays resulting from the government's revisions at the end of the design phase (*id.*). Mr. Duncan indicated the parties had no discussions concerning the release of rights for future changes or claims during the Mod 1 negotiations (*id.*).

Mr. Duncan's intention expressed in his declaration appears to be supported by contemporaneous events. During the Mod 1 negotiations, the Navy requested Haskell submit updated pricing to complete the various design changes (SOF ¶ 4). Haskell provided the Navy with its updated pricing with a cost estimate for each item and a request for a time extension, with compensable days, resulting from those design changes (*id.*). The pricing proposal did not include any costs for future unanticipated weather impacts resulting from the design change delay (*id.*). The Navy responded

---

[7] Of course, the parties would have had a difficult time including increased costs resulting from future weather impacts in the modification at this time since those costs would not yet be known.

11

that it wanted to note in the modification "a statement to the effect that this captures the cost and time of all changes, delays, and extra effort expended in the design phase" (SOF ¶ 5). The parties' focus appears to have been on the estimated costs and effort necessary to implement the various design changes and not future costs that could result from further delays during the construction phase.

Moreover, in July 2018, before the parties signed Mod 1, Mr. Duncan notified Mr. Wingert, the new contracting officer, that Haskell intended to submit an REA due to the weather delays (SOF ¶ 7). Mr. Duncan's actions suggest he did not believe Mod 1 already included the costs and time extension resulting from the weather delay. Similarly, Mr. Wingert did not suggest any such REA was included and covered by the Mod 1 release.

Finally, Mr. Wingert signed Mod 1 for the government (SOF ¶ 8). He was not, however, involved in the Mod 1 negotiations (SOF ¶¶ 5, 7). The government provided no testimony from Mr. Wingert or any individual involved with the Mod 1 negotiations concerning the government's intention regarding the scope of that release. We conclude the government failed to establish that a meeting of the minds occurred regarding whether the parties intended the release to include Haskell's current claim.

## C. Parties Subsequent Actions Indicate No Meeting of the Minds

The government's actions following the issuance of Mod 1 further raise a question concerning whether the parties had a meeting of the minds regarding the scope of the Mod 1 release. Throughout the contract's construction phase, Haskell submitted several requests for and notifications of weather impact claims (SOF ¶¶ 10, 11, 16). The government has presented no evidence that in responding to these claims it asserted Haskell had waived its right to assert the claims due to the release in Mod 1.

The parties conduct in continuing to consider and negotiate a claim after the execution of an agreement containing a release may indicate an accord and satisfaction was not intended to cover that claim. *See Meridian*, 885 F.3d at 1364-65 (recognizing that the meeting of the minds element of accord and satisfaction is informed by continued consideration of a claim after release, that the inquiry is fact specific, and influenced by a wide range of evidence); *WECC, Inc*., ASBCA No. 60949, 21-1 BCA ¶ 37,948 at 184,307 ("Taken as a whole, the parties' conduct manifested an intent not to consider the 'full settlement' language of the contract amendments as an accord and satisfaction.").

In this case, the Navy, following the execution of Mod 1, considered Haskell's weather impact claims and Haskell's position that the delays were the government's responsibility (SOF ¶ 13). In Mod 6, the government agreed to extend the contract completion date pursuant to FAR 52.249-10(b)(1)(x) for the unusually severe weather

12

but refused to compensate Haskell for any additional costs (SOF ¶ 14). Haskell refused to sign the modification granting the additional time because it wanted to pursue its rights for additional costs (*id.*). During these discussions, the government never asserted Haskell had given up its rights to assert a monetary claim due to the Mod 1 release (SOF ¶ 13).

Moreover, the government repeatedly denied Haskell's claim for increased costs resulting from the adverse weather it encountered allegedly due to the government caused design approval delay (SOF ¶¶ 16, 18, 20). The government consistently based its denial upon a finding that Haskell had failed to meet its burden of proof to show the government had unduly delayed the approval of Haskell's design (*id.*). The government never cited the Mod 1 release as a basis to deny the claim.

The parties' actions surrounding Mod 7 also raise questions concerning the parties' intentions regarding the scope of the release in Mod 1. The parties signed bilateral Mod 7 to extend the contract completion date due to certain concurrent delays (SOF ¶ 15). Before signing Mod 7, Mr. Gwyn inserted language specifically reserving Haskell's rights in connection with previous REAs "related to initial design review delays" (*id.*). In his declaration, Mr. Gwyn indicates he added this language "to assure that Haskell's rights to damages for delays were preserved for any and all delays that had been incurred on the project" (*id.*). The Navy contracting officer initialed Haskell's additional language (*id.*).

It is unclear why the Navy contracting officer initialed that language. Since our review of summary judgment motions requires us to review evidence in a light most favorable to the party opposing the motion with doubts resolved in favor of the nonmovant, we conclude the contracting officer's initials on this language could be construed as concurrence that Haskell retained its rights to assert its claim for adverse weather impacts resulting from the design review delay. *Crown Operations Int'l Ltd. V. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002) ("On summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion."). Such a conclusion is, of course, contrary to the government's position in its current motion that Haskell waived its rights in Mod 1 to assert this claim.

### III. No Judicial Admission

Finally, the Navy asserts Haskell in its complaint admits Mod 1 "addressed [the] drainage design changes that are the subject of Haskell's claim" (gov't mot. at 7 (citing compl. ¶ 62)). The Navy contends this statement constitutes a judicial admission that the subject matter of Mod 1 and Haskell's claim are the same (gov't mot. at 7-8). In its "Supplementary Response to Respondent's Statement of Undisputed Material Facts (SRRSUMF)," Haskell suggests that while both Mod 1 and its claim deal with the drainage design changes, Mod 1 is vague and ambiguous and

addressed delays only at the start of the construction and not future changes or delays (SRRSUMF at 9-10).

Judicial admissions are formal concessions made in pleadings "that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus, the judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case . . . ." 2 McCORMICK ON EVIDENCE §254 (8th ed. 2022) (footnotes omitted); *Raytheon Co.*, ASBCA No. 57743 *et al.*, 16-1 BCA ¶ 36,335 at 177,147. Here, Haskell's admission is arguably ambiguous. The design changes that resulted in Mod 1 are clearly related to Haskell's claim since Haskell alleges those changes pushed the contract's construction phase into the unanticipated adverse weather. But an admission that the design changes are "the subject of Haskell's claim" does not necessarily lead to the conclusion that Haskell admitted the parties intended its claims for future unanticipated delays and damages resulting from adverse weather impacts were part of the Mod 1 release. A judicial admission must be unequivocal to be binding. *Mformation Techs. v. Research in Motion Ltd.*, 764 F.3d 1392, 1396-97 (Fed. Cir. 2014). As such, we conclude Haskell's statement in its complaint is not sufficient to support a determination that Haskell admitted the subject matter in Mod 1 is the same as its claim.

In summary, the government has not established that there was a meeting of the minds between the parties that "the delays and disruptions arising out of . . . the work as herein revised" in Mod 1 included Haskell's costs incurred due to unusually severe weather and seasonal differences allegedly resulting from the government project design changes that pushed construction into adverse weather periods.

## CONCLUSION

For the reasons stated above, we deny the government's motion for summary judgment.

Dated: February 22, 2024

ARTHUR M. TAYLOR
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

14

I concur                                            I concur

OWEN C. WILSON                              MICHAEL N. O'CONNELL
Administrative Judge                         Administrative Judge
Acting Chairman                               Vice Chairman
Armed Services Board                        Armed Services Board
of Contract Appeals                           of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63291, Appeal of The Haskell Company, rendered in conformance with the Board's Charter.

Dated: February 22, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals