ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Group III Mgt., Inc. | ) | ASBCA No. 64176 |

APPEARANCE FOR THE APPELLANT:     Paul E. Davis, Esq.
                                   Conner Gwyn Schenck PLLC
                                   Raleigh, NC

APPEARANCES FOR THE GOVERNMENT:   Michael P. Goodman, Esq.
                                   Engineer Chief Trial Attorney
                                   Allie E. Vandivier, Esq.
                                   Molly R. Hammersmith, Esq.
                                   Engineer Trial Attorneys
                                   U.S. Army Engineer District, Savannah

OPINION BY ADMINISTRATIVE JUDGE LAUFGRABEN
ON THE GOVERNMENT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

This case alleges compensable delay under a United States Army Corps of Engineers (USACE) contract to perform construction work at the Berkeley Gate Entry Control Point at Seymour Johnson Air Force Base in North Carolina. The contractor, appellant Group III Management, Inc. (Group III), contends that USACE delayed the project, and seeks an extension of the completion date, recovery of additional costs, and the release of liquidated damages. USACE has moved to dismiss the case for lack of jurisdiction and because the complaint fails to state a claim upon which relief can be granted. Alternatively, USACE contends that it is entitled to summary judgment on the ground that the parties previously resolved Group III's claim in a bilateral contract modification.[1]

For the reasons below, we deny USACE's motion.

---

[1] Group III's certified claim seeks the following relief: an 84-day time extension; extended general conditions costs; release of liquidated damages; and unrelated direct costs (R4, tabs 2.01 at 74; 6.02 at 2787). USACE's motion to dismiss for lack of jurisdiction, if granted, would dispose of Group III's entire claim; however, its motion to dismiss for failure to state a claim and for summary judgment only pertain to Group III's request for a time extension, general conditions costs, and release of liquidated damages–not the unrelated direct costs.

**STATEMENT OF FACTS FOR PURPOSES OF THE MOTION**

1.  On September 28, 2021, USACE awarded Contract No. W912HN21C3008 (contract) to Group III for construction work at the Berkeley Gate Entry Control Point at Seymour Johnson Air Force Base, in North Carolina. The contract was for a firm-fixed price of $4,883,000 and required completion within 365 days of the notice to proceed. (R4, tab 3.07 at 2656-60)

2.  Under the contract, Group III agreed to demolish the current vehicle access point and replace it with a new, secure roadway featuring advanced active and passive vehicle barriers. In addition, Group III agreed to construct a new vehicle search area and an overwatch facility to enhance security operations. (R4, tab 3.01 at 161)

3.  USACE issued a notice to proceed on December 8, 2021, which set a December 8, 2022 completion date (R4, tab 3.08 at 2707).

4.  During performance, the parties recognized that the contract contained a design defect related to drainage. So on July 22, 2022, USACE issued a request for proposal to Group III for the following work: "Drainage Revision[.] Revise storm drainage piping, revise road grade elevations, and delete bio-swale in accordance with revised drawings" (R4, tab 6.01 at 2765-67). USACE designated the drainage-revision work as BJ005 (*id.* at 2765).

5.  Group III submitted a proposal for the drainage-revision work on September 1, 2022, which anticipated that such work would require a 115-day time extension (R4, tabs 2.01 at 73; 6.01 at 2736).

6.  However, Group III clarified that its proposal was "based on an assumed modification issuance by 21NOV22. Issuance of modification for BJ005 beyond 21NOV22 will result in additional day for day delay to the project." (R4, tab 6.01 at 2739)

7.  USACE did not issue a modification before November 21, 2022, because it needed additional funds for the drainage-revision work and the funding process took longer than expected (app. supp. R4, tab 7 at 62). Thus, in a December 20, 2022 letter, Group III expressed concern that the proposed 115-day extension for that work would be insufficient given USACE's delay in issuing the modification and "reserve[d] [its] rights to be able to recoup losses" due to the "lost time and lost production" for that delay (*id.* at 61).[2]

---

[2] USACE appears to attribute the delayed issuance of Modification No. P00003 entirely to delays in the funding process (gov't mot. at 17 n.2). In contrast, Group III contends that the funding process was only one "component" of

8.  In his January 9, 2023 response, the Contracting Officer recommended that Group III sign the contract modification for the drainage revision work, including the 115-day extension, when funding arrived and confirmed that doing so would not prejudice Group III from obtaining additional time for the issuing delay:

> Funding delays on modifications are not rare.  The general process is to execute the modification bilaterally when funding arrives, then issue an RFP for the delay caused by lack of funding.  This RFP would cover any delays from the actual modification execution and time the modification was originally anticipated to be executed, with other factors on the job that may impact the time analysis.
>
> As part of your contract, you are allowed to submit a Request For Equitable Adjustment at anytime [sic] for any issue.  Signing this modification bilaterally binds you to the requirements within the scope of work for this modification.  I consider additional delays of funding a separate issue.  I recommend you sign this modification when sent to you for signature, for the amount and time that was negotiated in good faith.

(*Id.* at 62)

9.  USACE eventually obtained funding and, on February 22, 2023, the parties executed Modification No. P00003, which incorporated the drainage-revision work scope (R4, tab 4.01 at 2711-12).  The stated purpose for the modification was to "revise the storm drainage piping to avoid existing utility conflict, adjust final road grades to provide positive drainage, and to delete bioswale which is not needed since the project is decreasing impervious area" (*id.* at 2711).  Modification No. P00003 increased the contract price by $515,693 and extended the contract completion date by 115 days (*id*. at 2712).  Modification No. P00003 also included the following Closing Statement:

> It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the contractor and [its] subcontractors and suppliers for all costs and mark-ups directly or indirectly attributable to the change

---

USACE's issuing delay (app. resp. at 10).  Although the parties' positions lack clarity, we need not decide the precise reason for USACE's delay in issuing Modification No. P00003 at this point in the litigation.

3

> ordered, for all delays related thereto, and for the
> performance of the change within the time frame stated

(*Id.* at 2713)

10. On May 23, 2023, Group III contacted USACE about a time extension to account for USACE's delay in issuing Modification No. P00003 (app. supp. R4, tab 7 at 63). USACE recognized Group III's entitlement to additional time for the issuing delay, but the parties could not agree on the number of days (R4, tab 4.02 at 2717). Thus, on September 12, 2023, USACE unilaterally issued Modification No. R00007, which awarded $64,539 and a 52-day time extension to "[c]ompensate contractor for delays during the procurement of funds for BJ005 issued on 22 Feb 2023" (*id.* at 2716-17).

11. As a result of these and other modifications, the contract completion date was extended to February 28, 2024 (R4, tab 1.01 at 2). Group III achieved substantial completion on May 22, 2024 (*id.*). Given Group III's late completion, USACE assessed $63,252 in liquidated damages (84 days at $753 per day), which it has withheld (*id.* at 5, 14).

12. On or around July 26, 2024, Group III submitted a request for equitable adjustment (REA) seeking $96,703 and an 84-day time extension of the contract schedule to May 22, 2024. The cost increase was comprised of $11,805 in direct costs and $84,899 for 84 days of extended general conditions costs. (R4, tab 6.02 at 2787)

13. Group III's time impact analysis in support of its REA addressed two delays: (1) delays in *performing* the drainage-revision work required in Modification No. P00003; and (2) delays in USACE *issuing* Modification No. P00003. For the first category, Group III alleged that the 115 days provided in Modification No. P00003 provided only partial relief such that it was entitled to an additional 95-day extension. (R4, tab 6.01 at 2730-32)

14. For the second category, Group III alleged a 93-day delay due to the USACE's late issuance of Modification No. P00003, of which only 52 days had been granted. Thus, Group III alleged entitlement to another 41-day extension for the issuing delay. (*Id.*)

15. In total, Group III's time impact analysis identified 136 days of delay for which no extension had been approved. Although Group III's analysis would have supported a 136-day extension to July 13, 2024, Group III requested an 84-day extension to May 22, 2024, to align the contract completion date with the actual date on which it achieved substantial completion. (*Id.* at 2732)

4

16.  In a September 16, 2024 decision, USACE denied the REA for two reasons (R4, tab 6.03 at 2817).  First, as to Group III's requested time extension and related general conditions costs, USACE found that the "[p]revious modifications issued included appropriate time, as needed" and Group III's "analysis does not take into account the numerous days that no work was performed on this project" (*id.* at 2817-18).  Second, USACE found that the direct costs requested by Group III were already part of the contract scope (*id.* at 2817).

17.  On September 30, 2024, Group III submitted a revised REA that clarified the requested costs: $84,899 in extended general conditions costs; $4,681 in direct costs; $1,550 to prepare the REA; $9,113 in overhead and profit; and $1,002 in bond/insurance (R4, tab 6.05 at 2825).  The REA also stated: "I certify that the claim is made in good faith, that the supporting data are accurate and completed to the [sic]" (*id.* at 2820).

18.  In a November 8, 2024 letter, USACE recognized that Group III's revised REA appeared to contain a defective claim certification and requested that Group III clarify whether it intended to submit an REA or a certified claim (R4, tab 6.06 at 2834).

19.  On November 12, 2024, Group III submitted a certified claim seeking the same relief that it requested in its September 30, 2024 revised REA (R4, tab 2.01 at 73; R4, tab 6.05 at 2825).  As to the 84-day extension, Group III attached several documents, including its previously-submitted time impact analysis (*id.* at 74).  However, unlike the REA, which distinguished delays for performing the drainage-revision work and delays in issuing the modification, Group III refined its theory in the certified claim by alleging that all 84 days related to the period when "Group III had to wait (not work) for the funded change order" (*id.* at 73-74).

20.  On February 14, 2025, USACE denied Group III's claim in a contracting officer final decision (R4, tab 1.01 at 1).  The 90-day period within which to appeal that decision to the Board expired on May 15, 2025.

21.  On May 12, 2025, three days before the 90-day period expired, Group III sent notices of appeal by FedEx to the Board and the Contracting Officer (app. resp. at 5-6; gov't mot. at ex. 2).  The Contracting Officer received the notice the next day, May 13, 2025 (gov't mot. at ex. 2).  Although Group III's attorneys received confirmation of delivery to the Board on May 13, 2025, this was inaccurate and the FedEx package was returned to Group III's counsel on May 23, 2025 (May 31, 2025 notice of appeal at 2).  On May 31, 2025, Group III sent its notice of appeal to the Board by email (*id.* at 1).

5

<u>DECISION</u>

## I.  The Motion To Dismiss For Lack Of Subject-Matter Jurisdiction Is Denied

### A.  Legal Standard

When considering a motion to dismiss for lack of subject matter jurisdiction, the Board looks to the standards under Federal Rule of Civil Procedure (FED. R. CIV. P.)12(b)(1).  *L-3 Commc'ns Integrated Sys., L.P.*, ASBCA Nos. 60713, 60716, 17-1 BCA ¶ 36,865 at 179,624.  On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), we generally "accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of [the non-movant]." *Cotter Corp., N.S.L. v. United States*, 127 F.4th 1353, 1366 (Fed. Cir. 2025).  Disputed factual allegations, however, are subject to fact finding.  *L-3 Commc'ns Integrated Sys., L.P.*, 17-1 BCA ¶ 36,865 at 179,625.  In considering a motion to dismiss for lack of subject-matter jurisdiction, "[w]e 'may also look to matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record.'" *Id.* (quoting *Ute Indian Tribe of the Uintah & Ouray Indian Reservation v. United States*, 99 F.4th 1353, 1364 (Fed. Cir. 2024)).

### B.  Group III's Appeal Was Timely

The Board's jurisdiction is governed by the Contract Disputes Act (CDA), which requires that a contractor submit its claim to the contracting officer for a final decision.  41 U.S.C. § 7103(a)(1).  The contractor may appeal a final decision to a contract appeals board within 90 days of receiving the decision.  41 U.S.C. § 7104(a).  "It is well-settled that the Board lacks jurisdiction over any appeal filed outside of this 90-day appeal period, which is statutory and cannot be waived by the Board."  *US Pan Am. Solutions, LLC*, ASBCA No. 63957, 25-1 BCA ¶ 38,814 at 188,811.

In turn, Rule 1 provides that a "notice of an appeal shall be in writing and mailed or otherwise furnished to the Board within 90 days from the date of receipt of a contracting officer's decision.  The appellant (contractor) should also furnish a copy of the notice of appeal to the contracting officer."  Board Rule 1(a).

Although the 90-day deadline is jurisdictional and cannot be waived, we have recognized an exception for "misdirected appeals"–i.e., where the contractor fails to file with the Board within 90 days, but files a timely notice of appeal with the contracting officer that reflects the contractor's intent to challenge a final decision before this Board, as opposed to another tribunal.  *See Afghan Active Grp.*, ASBCA No. 60387, 16-1 BCA ¶ 36,349 at 177,211-12.  For instance, in *Afghan Active Group*, we found that the contractor's timely email to the contracting officer expressing dissatisfaction with the final decision was "tantamount to filing with the Board."  *Id.*

6

In contrast, we will not "'take[] jurisdiction over appeals misfiled with different tribunals' despite being filed on time with the contracting officer," because such appeals do not reflect an election to appeal to this Board. *See Ky. Bus. Enter.*, ASBCA No. 63023, 22-1 BCA ¶ 38,069 at 184,850 (finding no ASBCA jurisdiction where contractor's notice to the contracting officer expressed an intent to file with the Civilian Board of Contract Appeals) (citing *Waterstone Envtl. Hydrology & Eng'g, Inc.*, ASBCA No. 57557, 12-1 BCA ¶ 35,028 at 172,142). Thus, the misdirected appeal exception requires both (1) timely filing with the contracting officer and (2) an intent to appeal to this Board.

Both conditions are met here. First, Group III delivered its notice of appeal to the Contracting Officer within 90 days of the final decision (gov't mot. at ex. 2). Second, the notice was addressed to this Board, showing Group III's intent to contest the final decision in this forum (May 31, 2025 notice of appeal at ex. 1). Thus, under our precedent, Group III's appeal was timely.

USACE's arguments do not persuade us otherwise. To begin, USACE points to the Board's rules which distinguish (1) filing by the government postal service (filing occurs when transferred to postal service) and (2) filing by courier (filing occurs upon delivery) (gov't mot. at 12). Under USACE's reasoning, if Group III delivered its appeal to the Board by the postal service, then its appeal would have been timely; however, Group III sent its appeal by courier (FedEx), so we must measure timeliness by Board receipt, which occurred after the appeal deadline expired (*id.*). But USACE assumes that we may only consider when the *Board* received Group III's appeal, ignoring the rule that timely delivery to the contracting officer is "tantamount to filing with the Board" within the 90-day period. *See Afghan Active Group*, 16-1 BCA ¶ 36,349 at 177,211.

Next, USACE argues that the appeal was untimely because Group III did not "email the Contracting Officer after receiving the decision in February of any intent to appeal" (gov't mot. at 12 (citing *Afghan Active Grp.*, ASBCA No. 60387, 16-1 BCA ¶ 36,349)). But neither the CDA nor this Board's Rules require that a contractor email the contracting officer *in addition to* providing a notice of appeal. For that reason, USACE's reliance on *Afghan Active Group* is misplaced. *Afghan Active Grp.*, 16-1 BCA ¶ 36,349 at 177,211-12. There, we found that the contractor's email to the contracting officer comprised a notice of appeal, in part, because it "plainly 'expresse[d] dissatisfaction' with the [final decision]." *Id.* (quoting *Ft. McCoy Shipping & Servs.*, ASBCA No. 58673, 13-1 BCA ¶ 35,429 at 173,794). In contrast, no question exists as to whether Group III's appeal plainly expresses its dissatisfaction with the final decision and reflects an intent to challenge that decision before this Board.

Third, USACE argues that Group III could have discovered that FedEx failed to deliver the notice of appeal to the Board before May 25, 2025 (gov't mot. at 13). But USACE fails to explain how that fact affects jurisdiction. In any event, as discussed above, Group III filed its appeal to this Board with the Contracting Officer within 90 days of the final decision, which is enough to satisfy jurisdictional requirements.

Because Group III's appeal was delivered to the Contracting Officer within 90 days of the final decision and expressed Group III's intention to appeal that decision before this Board, we deny USACE's motion to dismiss for lack of jurisdiction.

## II. The Motion To Dismiss For Failure To State A Claim Is Denied

### A. Legal Standard

A motion to dismiss for failure to state a claim applies when the facts asserted in the complaint do not entitle the claimant to a legal remedy. *John Shaw LLC d/b/a Shaw Bldg. Maint.*, ASBCA Nos. 61379, 61585, 19-1 BCA ¶ 37,216 at 181,183. A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When entertaining a motion to dismiss for failure to state a claim, the Board considers the "sufficiency of allegations set forth in the complaint, 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *Lockheed Martin Integrated Sys., Inc.*, ASBCA Nos. 59508, 59509, 17-1 BCA ¶ 36,597 at 178,281 (quoting *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014)). In deciding such a motion, the Board "must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *URS Fed. Servs., Inc.*, ASBCA No. 62475, 21-1 BCA ¶ 37,826 at 183,703.

### B. Group III States A Plausible Claim For Compensable Delay

We deny USACE's motion to dismiss for failure to state a claim because the complaint sufficiently alleges entitlement to a compensable time extension. To demonstrate entitlement to a compensable time extension, the appellant must show "the extent of the alleged delay, the causal link between the government's wrongful acts and the delay in the contractor's performance, and the alleged harm to the contractor for the delay." *Kinetic Builders, Inc. v. Peters*, 226 F.3d 1307, 1316 (Fed. Cir. 2000).

Here, the complaint–including the claim incorporated by reference–alleges all three elements. First, as to the extent, the complaint alleges an 84-day delay (compl. ¶ 18). Second, as to the causal link, Group III alleges that activities on the project's

8

critical path could not be performed until USACE issued Modification No. P00003 to incorporate the drainage-revision work (R4, tab 6.04 at 2819-20). Group III anticipated that the modification would be issued on or before November 21, 2022, but the modification was not issued until February 22, 2023 due to delays in USACE's issuing process (R4, tab 6.01 at 2730). Although Modification No. P00003 provided additional time and money associated with *performing* the drainage-revision work, the modification did not compensate Group III for USACE's separate delay in *issuing* the modification, which affected the critical path (R4, tab 6.04 at 2819-20). Third, as to the alleged harm, Group III alleges that it incurred increased costs resulting from the delay and asserts that liquidated damages were wrongly assessed (compl. ¶¶ 14-15). These allegations, accepted as true, support Group III's compensable delay claim.

Even so, USACE points to Group III's allegation that USACE should have issued a stop-work order until funding was obtained, and states that the allegation is insufficient because the contract did not require USACE to issue a stop-work order and, in any event, it obligated Group III to prosecute the work diligently (gov't mot. at 14-15). But Group III need not allege that USACE was required to issue a stop-work order to show its entitlement to a compensable time extension. Moreover, USACE's argument speaks to the merits of Group III's claim–not to its plausibility. Group III's complaint and claim allege that USACE's failure to issue Modification No. P00003 in a timely fashion resulted in an 84-day delay, which is enough to support a reasonable inference that Group III is entitled to a time extension and extended general conditions costs.

Finally, USACE argues that the complaint lacks sufficient detail to support its delay claim and that it "cannot entertain what precise issue it is now tasked to defend" (gov't mot. at 14-15, 17). But Group III's claim makes clear that it arises from USACE's failure to issue Modification No. P00003 in a timely fashion (R4, tab 2.01 at 73-74). No rule requires greater specificity at this stage. And although USACE is correct that Group III's complaint and attachments appear to describe the delay in more than one way and Group III's calculations lack clarity (*e.g.*, 91 days in the time impact analysis and 84 days in the claim) (*id.* at 17 n.2; gov't reply br. at 11 n.3), these apparent inconsistencies raise merits issues that may be resolved after discovery and a hearing.[3]

---

[3] USACE also points out that Group III elected to proceed under Rule 12.3, which caps the contractor's recovery at $100,000 (gov't mot. at 17 n.2). Group III appears to satisfy this limit in that it seeks extended general conditions costs ($84,899) and direct costs as stated in the REA, excluding costs to prepare the time impact analysis and PM time related to the REA ($4,681) (compl. at 3; R4, tab 6.05 at 2825). It appears that Group III also seeks overhead and profit on these costs ($8,958), and bond/insurance ($985) (R4, tab 6.05 at 2825) on the

Accordingly, we deny USACE's motion to dismiss for failure to state a claim.

## III.  The Summary Judgment Motion Is Denied

### A.  Legal Standard

"In deciding motions for summary judgment, the Board looks to Rule 56 of the Federal Rules of Civil Procedure for guidance."  Board Rule 7(c)(2); *see also H&L Contracting LLC*, ASBCA No. 63695, 25-1 BCA ¶ 38,715 at 188,240.  Thus, the Board will grant summary judgment only if there is no genuine issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact arises when the non-movant presents sufficient evidence upon which a reasonable fact-finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the non-movant."  *Sauer Constr., LLC*, ASBCA No. 63738, 25-1 BCA ¶ 38,744 at 188,344.  "The moving party bears the burden of establishing the absence of any genuine issue of material fact[.]"  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  In considering a summary judgment motion, we "construe the evidence in the light most favorable to the non-movant and draw all reasonable inferences in its favor."  *Goodloe Marine, Inc.*, ASBCA Nos. 62106, 62446, 22-1 BCA ¶ 38,053 at 184,774.

### B.  Fact Issues Preclude Summary Judgment On USACE's Accord And Satisfaction Defense[4]

Modification No. P00003 reflects the parties' intent to resolve the additional time and money needed to perform the drainage-revision work and "all delays related thereto" (R4, tab 4.01 at 2712-13).  USACE contends that this language precludes Group III's claim for USACE's delay in issuing that modification (gov't mot. at 17).[5]

---

general conditions and direct costs.  Thus, we understand Group III to assert a monetary claim of $99,523.

[4] In its motion, USACE seeks both dismissal and summary judgment on its accord and satisfaction defense.  Because its defense requires us to consider evidence outside the complaint and its attachments, we only address it on summary judgment.  *See generally Dongbuk R&U Eng'g Co., Ltd.,* ASBCA No. 58300*, 13-1 BCA ¶ 35,389 at 173,637.

[5] USACE's reply in support of its motion contends that we should dismiss Group III's claim because it is subject to USACE's "waiver/release" defense (gov't reply br. at 11-12).  USACE did not raise a release defense in its motion and its reply simply characterizes the Closing Statement as a "release"; thus, we will not separately address USACE's release defense.  *See Med. Receivables Sols., Inc.*,

But as explained below, Modification No. P00003 does not unambiguously cover Group III's issuing-delay claim and the record reflects fact issues about the parties' intent.

An accord and satisfaction is "a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute." *See O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002) (quoting *Nev. Half Moon Mining Co. v. Combined Metals Reduction Co.*, 176 F.2d 73, 76 (10th Cir. 1949)). Determining whether an accord and satisfaction was reached requires a fact-specific inquiry into four elements: "proper subject matter, competent parties, meeting of the minds of the parties, and consideration." *Meridian Eng'g Co. v. United States*, 885 F.3d 1351, 1363 (Fed. Cir. 2018) (quoting *Brock & Blevins Co. v. United States*, 343 F.2d 951, 955 (Ct. Cl. 1965)). Only the third element–whether the parties reached a meeting of the minds–is at issue here.

A "meeting of the minds" requires a "mutual agreement between the parties with the intention clearly stated and known to both the contractor and the government." *The Haskell Co.*, ASBCA No. 63291, 24-1 BCA ¶ 38,537 at 187,333 (quoting *Collazo Contractors, Inc.*, ASBCA No. 53925, 05-2 BCA ¶ 33,035 at 163,747). As to whether the parties reached a meeting of the minds to resolve a claim through a contract modification, the government must show that "the parties intended the execution of [the modification] as a mutual agreement between the parties to settle" the claim at issue in the appeal. *Id.*

As we explain below, because USACE has not shown as a matter of law that the parties intended for Modification P00003 to cover Group III's claim for USACE's delay in issuing that modification, we deny its summary judgment motion.

### 1. Modification No. P00003 Does Not Unambiguously Apply To Group III's Issuing-Delay Claim

To determine whether the parties intended for a contract modification to cover the contractor's current claim, we start with the modification's text. *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009). "A contract term is unambiguous when there is only one reasonable interpretation . . . If more than one meaning is reasonably consistent with the contract language, then the contract term is

---

ASBCA No. 64036, 25-1 BCA ¶ 38,860 at 189,092. Even so, because the release and accord and satisfaction defenses rely on the same contract language and turn on whether the parties intended for Modification No. P00003 to cover Group III's issuing-delay claim, our analysis of both defenses would be the same.

11

ambiguous." *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996). If a contract term is ambiguous, "we may turn to extrinsic evidence to assess the parties' intent." *Pontchartrain Partners, LLC,* ASBCA No. 63615, 25-1 BCA ¶ 38,831 at 188,936.

Here, USACE has not shown that Modification No. P00003 unambiguously applies to Group III's issuing-delay claim. Modification No. P00003 was for "[d]rainage [r]evision" and required Group III to "revise storm drainage piping, revise road grade elevations, and delete bio-swale in accordance with revised drawings" (R4, tab 4.01 at 2712). It extended the contract completion date by 115 days and increased the contract price by $515,693 (*id.*). Group III agreed that the additional time and money "constitute[d] compensation in full" "for all delays related [to the]" "change ordered"–*i.e.*, the drainage-revision work (*id.* at 2713).

In contrast, Group III seeks an 84-day extension and extended general conditions costs for USACE's delay in issuing Modification No. P00003 (R4, tab 6.04 at 2819). Based on the facts before us, the extension is for "the time Group III had to wait (not work) for the funded change order"–not from the nature, complexity, or execution of the drainage-revision work (R4, tab 6.04 at 2819). Put another way, Modification No. P00003 reflects Group III's acceptance of the risk that the drainage-revision work itself could be more difficult and time-consuming than anticipated when it signed that modification–not the risk that internal USACE procedures could delay the modification's issuance. Thus, USACE has not shown that Modification No. P00003 unambiguously covers the issuing-delay claim.

USACE's arguments to the contrary are not persuasive. To begin, although USACE contends that Modification No. P00003 unambiguously includes Group III's issuing-delay claim, USACE does not make that showing based on the modification's text. Instead, USACE asserts that Modification No. P00003 must cover Group III's claim because all delays (including USACE's issuing delay) occurred before Group III signed the modification (gov't reply br. at 11). Although the Federal Circuit has determined that an unqualified "general release bars claims arising before the execution of the release," Modification No. P00003 is not a general release. *See Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1372 (Fed. Cir. 1999). A general release contains broad language reflecting the parties' intent to resolve all potential liability between them, such as a release of all "claims based upon events occurring prior to the date of the release," *id.* (quoting *Johnson, Drake & Piper, Inc. v. United States*, 531 F.2d 1037, 1047 (Ct. Cl. 1976)), or "all claims arising under or by virtue of the contract," *id.* (quoting *United States v. William Cramp & Sons Ship & Engine Bldg. Co.,* 206 U.S. 118, 128 (1907)). In contrast, Modification No. P00003 only applies to claims "related [to]" the "change ordered"–*i.e.*, the drainage-revision work–not to unrelated delays that occurred before the parties signed that modification (R4, tab 4.01 at 2713).

USACE also points out that Modification No. P00003 does not contain an express statement reserving Group III's right to pursue the issuing-delay claim (gov't reply br. at 10 (citing *Whiting-Turner Contracting Co.*, ASBCA No. 56319, 10-1 BCA ¶ 34,436 at 169,951)). But no reservation is required as the issuing-delay claim is outside Modification No. P00003's scope.

Accordingly, because USACE has not shown that Modification No. P00003 unambiguously covers Group III's issuing-delay claim, we must consider extrinsic evidence to evaluate the parties' intent.

### 2. The Contracting Officer's Assurance That The Issuing-Delay Claim Would Be Treated Separately Raises Fact Issues About The Parties' Intent

The parties' communications before they signed Modification No. P00003 raise fact issues about their intent to resolve USACE's delays in issuing that modification. On December 20, 2022, several weeks before the parties executed Modification No. P00003, Group III expressed concern that the 115-day extension was insufficient to account for USACE's delay in issuing that modification, the implication of which is that Group III would need additional contract relief to account for "lost time and lost production" (app. supp. R4, tab 7 at 61). In response, on January 9, 2023, the Contracting Officer assured Group III that he "consider[ed] additional delays of funding a separate issue" and explained that "[t]he general process is to execute the modification bilaterally when funding arrives, then issue an RFP for the delay caused by lack of funding [to] cover any delays from the actual modification execution and [the] time the modification was originally anticipated to be executed" (*id.* at 62). Construed in the light most favorable to Group III, the Contracting Officer's statement that he considers USACE's delay in issuing Modification No. P00003 to be a separate delay category from the drainage-revision work is sufficient for a fact-finder to determine that the parties did not intend for Modification No. P00003 to cover Group III's issuing-delay claim.

Although USACE's motion does not address the Contracting Officer's statements in his January 9, 2023 letter, its reply characterizes those statements merely as a "reminder of the contractor's contractual rights–by signing the modification, the contractor is bound to the modification" (gov't reply br. at 10). But the question is whether the parties intended for Modification No. P00003 to cover Group III's claim for USACE's delay in issuing Modification No. P00003–not whether Group III is bound to it.

13

### 3. The Parties' Continued Consideration Of The Issuing-Delay Claim Raises Fact Issues About The Parties' Intent

Finally, in evaluating whether the parties intended for a contract modification to be an accord and satisfaction of the contractor's current claim, we may also consider the parties' "continued consideration of a claim after execution of a release[.]" *Meridian Eng'g Co*., 885 F.3d at 1364. Thus, even if a modification unambiguously covers a claim, "[t]he parties['] conduct in continuing to consider and negotiate a claim after the execution of an agreement containing a release may indicate an accord and satisfaction was not intended to cover that claim." *Haskell*, 24-1 BCA ¶ 38,537 at 187,334.

Here, putting aside that Modification No. P00003 does not unambiguously cover Group III's issuing-delay claim, the parties' continued consideration of that claim presents additional fact issues that we cannot resolve on summary judgment. After Modification No. P00003 was signed, the Contracting Officer attempted to reach a separate agreement with Group III on the "number of days impacted by this funding delay" (R4, tab 4.02 at 2717). Because the parties did not reach an agreement, the Contracting Officer issued Modification No. R0007 as a separate, unilateral modification to grant Group III a 52-day time extension specifically "for delays during the procurement of funds" for the drainage-revision work (*id.* at 2716-17). Construed in the light most favorable to Group III, the parties' ongoing discussions about the issuing-delay claim are sufficient for a fact-finder to determine that the parties did not intend for Modification No. P00003 to cover that claim.

In sum, because USACE's accord and satisfaction defense requires that we resolve fact issues about the parties' intent, we cannot resolve that defense on summary judgment.

CONCLUSION

For these reasons, we deny USACE's motion to dismiss for lack of jurisdiction and for failure to state a claim, and for summary judgment. Within 14 days of this decision, the Board will contact the parties to schedule a pre-hearing conference in accordance with FED. R. CIV. P Rule 12.3(b). Until we hold that conference, the Rule 12 deadline to resolve this appeal remains suspended.

Dated: March 2, 2026

ERIC E. LAUFGRABEN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 64176, Appeal of Group III Mgt, Inc., rendered in conformance with the Board's Charter.

Dated: March 2, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals